**CULBERSON, INC., Plaintiff-Appellant,**

v.

**INTERSTATE ELECTRIC COMPANY, INC., Defendant-Appellee.**

No. 86–1842.

United States Court of Appeals, Fifth Circuit.

July 16, 1987.

Rehearing and Rehearing En Banc Denied Aug. 14, 1987.

Kevin J. Keith and James A. Williams, Dallas, Tex., for plaintiff-appellant.

Karl Dial and William D. Sims, Jr., Dallas, Tex., for defendant-appellee.

Before WRIGHT,* GEE and JOLLY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Culberson, a wholesale and retail distributor of video products, sued Interstate, an authorized RCA wholesaler, for conspiring to restrain trade in violation of Section 1 et seq. of the Sherman Act. 15 U.S.C. § 1 et seq. (1982). The district court granted summary judgment for Interstate. We affirm.

BACKGROUND

Culberson is a wholesale and retail distributor of televisions and other appliances in the Dallas/Fort Worth area. It has never been an authorized RCA dealer. Between 1976 and 1982, it acquired RCA tele-

* Circuit Judge of the Ninth Circuit, sitting by     designation.

vision sets from McDonald, an authorized RCA dealer in New Orleans. It also acquired some from Appliance, an authorized dealer in Toledo. Culberson sold some of these instruments to other retail dealers in Dallas/Ft. Worth. The others he sold directly to consumers.

Interstate is the authorized RCA wholesale distributor in Dallas/Ft. Worth. Together with numerous other authorized RCA distributors, it complained to RCA that subdistribution and transshipment were hurting its sales performance.[1] RCA responded by adopting a policy against subdistribution and so notified its distributors by letter in February 1982. McDonald then stopped supplying to Culberson. In March 1983, RCA sent a second letter to its distributors reaffirming its policy against subdistribution. Upon its receipt, Appliance also stopped supplying Culberson from Toledo.

Culberson then had no source of RCA equipment except through Interstate. But Culberson complained that Interstate (1) would not meet its price; (2) would not supply popular models; and (3) required a longer lead time for delivery than did other retailers in the area.

Culberson brought suit, charging RCA, Interstate, and other distributors with, *inter alia*, violating the Sherman Act by conspiring to cut off its supply of television sets from outside Dallas/Ft. Worth.

DISCUSSION

Section 1 of the Sherman Act requires that the plaintiff show that a conspiracy existed. *Monsanto v. Spray-Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984).[2] Independent action can not result in a violation. *Id.* at 761, 104 S.Ct. at 1469.

■ A conspiracy may be shown by circumstantial evidence. *See Kreuzer v.*

*American Academy of Periodontology*, 735 F.2d 1479, 1486 (D.C.Cir.1984). To survive a summary judgment motion, the evidence must tend to "exclude the possibility" that the defendants acted independently. *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). Inferences may be drawn from the behavior of the alleged conspirators, but they must be "reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents." *Id.*

Culberson argues that Interstate urged RCA repeatedly to stop supplying Culberson from outside Interstate's territory. Culberson argues that RCA responded to these complaints by adopting a policy designed specifically to end McDonald's and Appliance's supply of products to Culberson. RCA indicated that it would terminate distributorships of those who continued subdistributing. Appliance and McDonald then stopped supplying Culberson. Culberson concludes that this showed a causal connection between the distributors' complaints and RCA's actions to end subdistribution, raising reasonable inference of conspiracy.

Distributor complaints are to be expected in response to another's price-cutting. *Monsanto*, 465 U.S. at 763, 104 S.Ct. at 1470. They do not indicate an illegal conspiracy. *Id.* As this court said in *Business Electronics Corp. v. Sharp Electronics Corp.*, 780 F.2d 1212, 1217 (5th Cir. 1986):

> [t]o allow evidence of termination following or in response to complaints to serve as the sole basis for [finding a conspiracy] would tend to discourage legitimate dealer complaints and legitimate manufacturer action in the face of such complaints. By disrupting communications

---

1. Subdistribution occurs when a manufacturer sells to a wholesaler who sells to a retailer, and the retailer sells to another retailer, not to consumers. Transshipment applies to a sale at wholesale to a retail distributor located outside the wholesaler's sales territory. Both of these practices applied to Culberson's purchases from McDonald and Appliance.

2. Section 1 of the Sherman Act provides in part:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal....
   15 U.S.C. § 1 (1982).

between manufacturer and dealer it would create "an irrational dislocation in the market".

(Quoting *Monsanto*, 465 U.S. at 763–64, 104 S.Ct. at 1470).

We find this case analogous to those of dealer termination.[3] Both involve claims that the manufacturer has conspired to stop trading with an undesirable distributor.

Culberson argues that the holding in *Sharp* to submit the case to a jury should apply here, because the evidence is comparable. We disagree. In *Sharp*, this court held that a jury could reasonably infer a price-maintenance conspiracy from these facts: (1) the manufacturer sought the price-cutting distributor's adherence to a price list before it appointed a rival distributor; (2) the rival distributor followed the manufacturer's price list; (3) the rival distributor "complained vigorously" to the manufacturer about the price-cutting distributor; (4) the manufacturer responded by immediately terminating the price-cutter; and (5) the price-cutter produced evidence that it was not free-riding and that its sales performance was equal to that of its rival. *Sharp*, 780 F.2d at 1219. The sum of the evidence showed a close relationship between the actions of the manufacturer and the rival, and the price-cutter's termination.

 Here, by contrast, the events are related loosely. Evidence shows that RCA began to formulate its anti-subdistribution policy in 1981, before Interstate's first complaint about Culberson. Further, there were many other distributors complaining. Dealer-initiated contact fails to establish that a manufacturer has imposed restrictions collusively, not based on its independent business judgment. *See Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1199 (6th Cir.1982), *cert. denied*, 466

U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 190 (1984).

Because the evidence does not allow a reasonable inference of conspiracy over the competing inference of independent action, we agree with the grant of summary judgment.

AFFIRMED.

---

3. Dealer termination cases are those, such as *Monsanto* and *Sharp*, involving claims that a manufacturer conspired with other distributors to establish strict price or non-price guidelines and terminated distributors that failed to follow them. Non-price guidelines are exemplified by the "free-rider" case. There, the manufacturer has required its distributors to implement a market development program. By not following the program, the free-rider saves the expense of its implementation and discounts the product, underselling the other distributors. *See* Posner, *The Rule of Reason and the Economic Approach: Reflections on the Sylvania Decision*, 45 U.Chi.L.Rev. 1, 6–10 (1977).